**Mary Ann MARTIN, Plaintiff/Appellant,**

v.

**Keith BUZAN, Defendant/Respondent.**

**No. 62644.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 18, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 15, 1993.

Application to Transfer Denied
Aug. 17, 1993.

Robert L. Officer, Mark M. Wenner, Clayton, for plaintiff/appellant.

Richard J. Behr, Mitchell B. Stoddard, Edwardsville, IL, for defendant/respondent.

AHRENS, Presiding Judge.

Plaintiff, Mary Ann Martin, appeals from judgment entered in favor of defendant,

Keith Buzan, in a suit for damages for personal injuries sustained when plaintiff and defendant collided during play in a softball game. Plaintiff claims the trial court erred in submitting an assumption of risk instruction to the jury. We affirm.

Plaintiff and defendant participated in a co-ed softball game on June 26, 1987. They played on opposing teams. Plaintiff was the catcher for her team; defendant was a baserunner on second base. As defendant ran the bases, he collided with plaintiff in a play at home plate. Plaintiff broke her left ankle in several places during the collision.

In her petition, plaintiff alleged that defendant acted in reckless disregard for her safety during the game. At trial, plaintiff and defendant presented conflicting testimony as to precisely how the collision occurred. The transcript included in the record contains only the direct examination of each party. The parties testified to the following.

Plaintiff testified that she had played on other softball teams prior to her injury, and considered herself a fairly good athlete. During the game with defendant, she was playing the position of catcher. Defendant was at second base, when a member of defendant's team hit the ball to right field. Defendant ran to third base, and then started towards home plate. Another player on plaintiff's team threw the ball to plaintiff. At the time plaintiff caught the ball, defendant was running down the third base line. Plaintiff then turned her glove, with the ball inside, toward defendant. At that point, defendant was about twenty two feet from home plate. Defendant continued running towards home plate without slowing down; plaintiff held the ball in front of her, in the direction of defendant. As defendant reached home plate, his body struck plaintiff's shoulder and his right foot stepped on plaintiff's left foot. Plaintiff did not move as defendant ran home because "[she] thought that [defendant] would give himself up."

Defendant testified he was on second base when the play started. A member of his team hit the ball to the right side of the field. Defendant ran to third base, and his third base coach waved him on to home plate. When defendant was about thirty feet from home plate, he saw the ball near the first base area. As he neared home plate, defendant selected the part of home plate he was going to try and tag. At that point, plaintiff did not have the ball. When defendant was about fifteen feet from home plate, he saw the ball coming towards home plate. Plaintiff stood facing third base, with her hands above her head, waiting for the ball.

Defendant ran at full speed as he approached home plate. He then saw plaintiff standing with the ball. As defendant attempted to tag home plate, he bent over to avoid plaintiff and to avoid getting hit with the ball. Defendant collided with plaintiff; his arms, legs and hips hit plaintiff's chest and legs. Plaintiff tagged out defendant.

At the conclusion of the evidence, the trial court submitted a comparative fault instruction to the jury, and, over the objection of plaintiff, also submitted the following assumption of risk instruction:

*Instruction No. 7*

In your verdict you must not assess a percentage of fault to defendant if you believe:

First, the plaintiff knew of the danger of defendant colliding with her, and

Second, the plaintiff intelligently acquiesced in that danger.

■ Plaintiff claims the trial court erred in submitting the assumption of risk instruction. Her sole point on appeal is:

The trial court incorrectly instructed the jury in Instruction No. 7 over plaintiff's objection that they could not assign any fault to defendant if the jury believed that plaintiff knew of the danger of defendant colliding with her and "intelligently acquiesced" in that danger.

We note that plaintiff's point relied on does not comply with Rule 84.04(d), as it fails to state briefly and concisely wherein and why the action of the trial court is claimed to be erroneous. *Thummel v.*

*King,* 570 S.W.2d 679, 684–85 (Mo. banc 1978). An appellate court need not consider allegations of error which are not properly briefed. Rule 84.13(a). We are, however, able to ascertain the issue on appeal from the argument section of plaintiff's brief, and will therefore consider plaintiff's claim of error.[1]

Plaintiff argues that, since our Supreme Court adopted comparative fault in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), assumption of risk is no longer an absolute bar to recovery in Missouri. Plaintiff cites no authority, nor has our independent research located any cases which indicate that, since the adoption of comparative fault, Missouri no longer recognizes assumption of risk as a defense in actions for injuries sustained while participating in athletic competition.

The most recent Missouri Supreme Court case regarding a player's liability for injuries sustained by a co-participant in a sporting event is *Ross v. Clouser,* 637 S.W.2d 11 (Mo. banc 1982). In *Ross,* plaintiff was injured when knocked down during play in a softball game. The court considered the standard of care imposed upon participants in athletic competition. The Supreme Court held that an action for injuries sustained during athletic competition must be predicated on recklessness, not mere negligence. *Id.* at 13–14. The *Ross* court also found that assumption of risk can be an affirmative defense to a charge of reckless conduct. *Id.* at 14 (citing Restatement (Second) of Torts, §§ 496A and 503 (1965); Rule 55.08). In so finding, the court stated a plaintiff is barred from recovery when, either expressly or impliedly, plaintiff had voluntarily accepted the danger of a known and appreciated risk and intelligently acquiesced in it. *Id.*

Our Supreme Court decided *Ross,* 637 S.W.2d 11, one year prior to the adoption of comparative fault in Missouri. Plaintiff contends the finding in *Ross* that assumption of risk can be a defense to a claim of reckless conduct is therefore no longer controlling. Plaintiff alleges a party may only raise assumption of risk as a factor to be weighed by the jury in assessing fault, and not as a complete bar to recovery.

■ The authority to abolish assumption of risk as an affirmative defense to a charge of reckless conduct does not rest with this court. Our Supreme Court's affirmation in *Ross,* 637 S.W.2d 11, of assumption of risk as a defense in actions for injuries sustained in athletic competition is still controlling upon this court. *See Bogart v. Jack,* 727 S.W.2d 447, 449–50 (Mo. App.1987). Accordingly, we conclude that assumption of risk continues as an affirmative defense to a charge of reckless conduct during athletic competition.

Although our Supreme Court has not specifically held that assumption of risk remains a viable defense, we believe there are indications that the Supreme Court did not intend to abolish assumption of risk as a defense in Missouri by adopting comparative fault. In *Gustafson,* 661 S.W.2d 11, the Supreme Court stated that, in adopting comparative fault, it had supplanted the doctrines of contributory negligence, last clear chance, and humanitarian negligence. *Gustafson,* 661 S.W.2d at 16. The court did not, however, abolish the doctrine of assumption of risk. *Id.* Nor has our Supreme Court eliminated assumption of risk as an affirmative defense under Rule 55.-08.[2]

Several comparative fault jurisdictions have continued to apply assumption of risk as a defense in actions for injuries sustained while participating in athletic competition. *See, e.g., Knight v. Jewett,* 3 Cal. 4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696

---

1. Plaintiff makes no claim of error regarding the language of the instruction, but only of the court's submission of an assumption of risk instruction to the jury.

2. We note that our Supreme Court has "tentatively approved" a revision to Rule 55.08 that deletes contributory negligence as an affirmative defense and adds comparative fault as an affirmative defense. The proposed new Rule 55.08, which is to become effective on January 1, 1994, still includes assumption of risk as a defense. This reflects an intent on the part of our Supreme Court to retain assumption of risk as an affirmative defense and not to merge the doctrine of assumption of risk into comparative fault.

(1992); *Kuehner v. Green,* 436 So.2d 78 (Fla.1983); *Duffy v. Midlothian Country Club,* 135 Ill.App.3d 429, 90 Ill.Dec. 237, 481 N.E.2d 1037 (1985); *Turcotte v. Fell,* 68 N.Y.2d 432, 510 N.Y.S.2d 49, 502 N.E.2d 964 (1986); *Ridge v. Kladnick,* 42 Wash. App. 785, 713 P.2d 1131 (1986). These courts, as well as several commentators, have divided assumption of risk into different classifications, and found that some classifications of assumption of risk should be retained even after the adoption of comparative fault.

Prosser and Keeton divide assumption of risk into "express" assumption of risk and three forms of "implied" assumption of risk, "primary", "secondary", and "unreasonable." Prosser & Keeton, Torts, § 68, at 480–98 (5th ed. 1984). "Express" assumption of risk occurs when plaintiff and defendant agree, in advance, that defendant owes no legal duty to plaintiff. Prosser & Keeton, Torts, § 68, at 482–84 (5th ed. 1984). Under the implied form of assumption of risk, plaintiff's voluntary willingness to assume a known risk is viewed as a consent by plaintiff to the danger, which relieves defendant of a legal duty. Prosser & Keeton, Torts, § 68, at 484–86 (5th ed. 1984). Several courts have recognized this classification scheme. *See, e.g., Knight,* 11 Cal.Rptr.2d 2, 834 P.2d 696; *Turcotte,* 510 N.Y.S.2d 49, 502 N.E.2d 964; *Ridge,* 713 P.2d 1131. *See also* Annotation, *Effect of Adoption of Comparative Negligence Rules on Assumption of Risk,* 16 A.L.R. 4th 700, 704 (1982). Prosser and Keeton argue that "express" and "primary" assumption of risk should logically continue to act as an absolute bar to recovery after the adoption of comparative fault because they involve an express or implied "choice by plaintiff to relieve the defendant of [his or her] legal duty." Prosser & Keeton, Torts, § 68, at 496 (5th ed. 1984).

Assumption of risk as applied to athletic competition generally involves "primary" assumption of risk. *Turcotte,* 510 N.Y.S.2d at 53, 502 N.E.2d at 968. Primary assumption of risk is utilized in situations where a plaintiff has assumed known risks inherent to a particular situation or activity. *Duffy,* 90 Ill.Dec. at 241, 481 N.E.2d at 1041. The assumed risks in such activities are not those created by a defendant's negligence but rather by the nature of the activity itself. *Id.* A defendant's duty in such situations is to make the conditions as safe as they appear to be. *Turcotte,* 510 N.Y.S.2d at 53, 502 N.E.2d at 968. If the risks of the activity are perfectly obvious or fully comprehended, plaintiff has consented to them and defendant has performed his or her duty. *Id.* (citing Prosser & Keeton, Torts, § 68 (5th ed. 1984)). Plaintiff's consent is implied from the act of electing to participate in the activity. *Id. See· also Knight,* 11 Cal. Rptr.2d at 10, 834 P.2d at 704. In such situations, assumption of risk is not actually an absolute defense but a measure of a defendant's duty of care; therefore, it survives the doctrine of comparative fault.[3] *See Turcotte,* 510 N.Y.S.2d at 53, 502 N.E.2d at 968 (citing Prosser & Keeton, Torts, § 68, at 481 n. 10, 496–97 (5th ed. 1984); Restatement (Second) of Torts, § 50, comment b (1965)).

Certain risks or dangers are inherent in athletic competition. As previously indicated, under Missouri law, a defendant is liable for a plaintiff's injury sustained during athletic competition only if the defendant acted recklessly. *Ross,* 637 S.W.2d at 14. Therefore, persons participating in sports may be held to have consented, by their participation, to those injuries which are reasonably foreseeable consequences of participating in the competition. *Turcotte,* 510 N.Y.S.2d at 53, 502 N.E.2d at 968.

Whether plaintiff assumed the risk of the collision with defendant at home plate was a proper determination for the

---

**3.** The Supreme Court of Missouri recognized a distinction between "primary" and "secondary" assumption of risk in *Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 712 (Mo. banc 1990). The *Krause* court noted that "primary" assumption of risk may be a complete bar to recovery, as it indicates that the defendant did not owe a duty to plaintiff. *Id.* at 712. Although *Krause* was not a case involving a party's liability for injuries sustained in athletic competition, it was decided after the state of Missouri became a comparative fault jurisdiction.

jury under the facts of this case. *See Ross*, 637 S.W.2d at 14. The parties presented sufficient evidence from which the jury could have found that the collision was an inherent risk of the game, and that plaintiff assumed this risk by playing in the softball game. Reasonable minds could have concluded plaintiff assumed the risk of defendant colliding with her at home plate.

This case falls within the "primary" assumption of risk doctrine. Accordingly, the trial court did not err in submitting the assumption of risk instruction to the jury.

The judgment of the trial court is affirmed.

CRIST and REINHARD, JJ., concur.