Carrie LEWIS, Lesa Moffatt,
Appellants,

v.

SNOW CREEK, INC., Respondent.

No. WD 55070.

Missouri Court of Appeals,
Western District.

March 31, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 1999.

Application for Transfer Sustained
Sept. 21, 1999.

Court Retransferred Dec. 21, 1999.

Court of Appeals Opinion Readopted
Jan. 6, 2000.

Frederick R. Edmunds, Jr., Overland Park, KS, for Appellants.

Thomas J. Magee, St. Louis, for Respondent.

Before RIEDERER, P.J.,[1] LOWENSTEIN and LAURA DENVIR STITH, J.J.

PER CURIAM.

This is an appeal from summary judgments granted in each of two separate suits filed by two different plaintiffs making identical claims against Respondent. Pursuant to a motion filed by Appellants and Respondent, the cases have been consolidated on appeal. Because we find that there is disputed evidence regarding both Respondent's liability as a possessor of land and Appellant's implied assumption of the risk, and because we find that express assumption of the risk did not apply under the facts in this record, we reverse on those issues. However, because there is no disputed evidence regarding count III of the petitions, and because Respondent is entitled to judgment as a matter of law on that count, we affirm as to that count.

**Factual and Procedural Background**

On January 8, 1995, Appellant Lesa Moffatt rented skis at Snow Creek Ski Area and signed a "Snow Creek Ski Area Rental Form." On January 21, 1995, Appellant Carrie Lewis rented skis at Snow Creek Ski Area and signed a "Snow Creek Ski Area Rental Form." The form states in pertinent part:

10. I hereby release from any legal liability the ski area and its owners, agents and employees, as well as the manufacturers and distributors of this equipment from any and all liability for damage and injury or death to myself or to any person or property resulting from the selection, installation, maintenance, adjustment or use of this equipment and for any claim based upon negligence, breach of warranty, contract or other legal theory, accepting myself the full responsibility for any and all such damage, injury or death which may result.

This document was signed by both Lewis and Moffatt during the process of renting equipment. Lewis and Moffatt both stood in line with people in front of and behind them when they received this form. The form had to be completed before obtaining skis and equipment. Both Lewis and Moffatt claim that they felt pressured to move along and did not have an adequate opportunity to read and fully comprehend the rental form.

Lewis and Moffatt both fell on ice at Snow Creek and were injured. Lewis and Moffatt each filed a separate petition against Respondent which included the same four counts: I. Defendant owed a duty to plaintiff as a business invitee, and breached that duty by failure to warn of the icy condition where the fall occurred; II. Defendant negligently adjusted and maintained the bindings on Plaintiff's skis because they failed to properly release when plaintiff fell, injuring plaintiff's leg; III. Defendant created a dangerous condition by making artificial snow; and IV. Defendant was grossly negligent in failing to warn plaintiff of the dangerous condition on its premises. Respondent general-

1. Judge Riederer resigned from the court effective November 30, 1999.

ly denied Appellant's claims in its answer and asserted affirmative defenses of comparative fault and assumption of the risk.

Respondent filed a motion for summary judgment in each case. Respondent submitted as evidence the "Snow Creek Ski Area Rental Form" and the deposition of the plaintiff in each case. In response to Respondent's motions for summary judgment, each Appellant submitted additional evidence in the form of her own affidavit. Both motions for summary judgment were granted. Lewis' and Moffatt's claims are identical, and they have been consolidated on appeal.

## Standard of Review

■ Our standard of review of a summary judgment is essentially *de novo*. *Lawrence v. Bainbridge Apartments*, 957 S.W.2d 400, 403 (Mo.App.1997) (citing, *ITT Commercial Finance Corp., v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). We review the record in the light most favorable to the party against whom judgment was entered and grant the non-moving party the benefit of all reasonable inferences from the record. *Id.* To be entitled to summary judgment a movant must demonstrate that there is no genuine dispute of material fact and that he or she is entitled to judgment as a matter of law. *Id.*

In accordance with the law, we analyze whether summary judgment is appropriate on the record developed by the parties and presented to this court. The Respondent advances several arguments why summary judgment is appropriate. First, it claims as a possessor of land, it has no duty to warn a business invitee of dangers which are open and obvious as a matter of law and that the ice alleged to have caused the fall and injury was open and obvious as a matter of law. Second, it claims Appellants expressly assumed the risk of this injury by signing the Rental Form. Third, it claims Appellants impliedly assumed the risk of this injury by engaging in the sport

of skiing. Fourth, it claims the Rental Form operates as a release.

## I. Duty of the Possessor of Land

■ Respondent claims that the presence of ice on a ski slope should be determined to be an open and obvious danger as a matter of law.

## A. Duty Owed To A Business Invitee

■ "The standard of care owed by a possessor of land is dependent upon the status of the injured party." *Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928, 932 (Mo.App.1996). An invitee "is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993) (quoting, Restatement (Second) of Torts, § 332 (1965)). As business invitees, the Appellants were entitled to reasonable and ordinary care by Respondent to make its premises safe. *Peterson*, 920 S.W.2d at 932. A possessor of land is liable to an invitee only if the possessor:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Id.* Generally, a possessor of land does not have a duty to protect invitees against conditions that are open and obvious as a matter of law. *Id.* at 933. "The exception to this rule is where 'the possessor should anticipate the harm despite such knowledge or obviousness.'" *Id.* A condition is open and obvious if invitees should reasonably be expected to discover it. *Id.*

■ Given the preceding principles, the pivotal question is whether the ice was an open and obvious condition on the land

as a matter of law. If we determine the ice was an open and obvious condition on the land as a matter of law, Respondent as possessor has no liability – unless he should anticipate the harm despite such knowledge or obviousness. *Id.* Thus, the next question would be whether Respondent could reasonably rely on its invitees – skiers—to protect themselves from the danger of ice or whether Respondent should have expected that skiers would not appreciate the danger thus posed. *Harris,* 857 S.W.2d at 226. We need not reach the second question because this court is unwilling, under the facts as developed in this case, to declare that the conditions on Respondent's property, which allegedly caused the fall, were open and obvious as a matter of law. To the contrary, we find there is a genuine dispute regarding a material fact: the nature and character of the ice alleged to have caused the fall. "For purposes of Rule 74.04, a 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *ITT,* 854 S.W.2d at 382. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.* In this case, Appellants characterized the ice as large areas of thick impenetrable ice hidden under a dusting of snow. The evidence is that the Appellants fell on ice which they did not see because of the snow. Respondent maintained that both Appellants encountered ice on trails that the Appellants had been down several times before they fell. This is not sufficient evidence for this court to find that the ice Appellants encountered was an open and obvious danger as a matter of law. It is not clear that the Appellants should have reasonably been expected to have discovered the icy condition. *Peterson,* 920 S.W.2d at 933. "When there is disputed evidence – as in this case – on whether the landowner had reason to expect this type of accident ..., the case properly belongs to the jury." *Harris,* 857 S.W.2d at 229. Therefore, we find that Respondent was not entitled to summary judgment because there is a genuine issue regarding the ice, and the ice in question was not an open and obvious danger as a matter of law.

## II. Assumption of Risk

 Appellants claim that the trial court erred in granting summary judgment because the defense of assumption of the risk requires a jury determination as to disputed material facts. Specifically, Appellants claim that a jury should decide whether they knew of the ice and whether they understood and appreciated the danger posed by the ice. Respondent claims that the Appellants' injuries were the result of a risk inherent in the sport of skiing, and therefore, the Appellants assumed the risk, or in the alternative, that Appellants expressly assumed the risk by signing the rental form. Assumption of risk is generally categorized as express, implied primary, and implied secondary (reasonable and unreasonable). *Sheppard v. Midway R–1 School District,* 904 S.W.2d 257, 261–62 (Mo.App.1995).

### A. Express Assumption of Risk

 Express assumption of risk occurs when the plaintiff expressly agrees in advance that the defendant owes him no duty. *Id.* Recovery is completely barred since there is no duty in the first place. *Id.* Respondent argues that the Rental Form, signed by both Appellants, specifically mentioned the snow. Respondent correctly argues that the Rental Form relieves it of liability for injury due to snow. The evidence is that the Appellants knew about the snow and voluntarily assumed that risk. However, we cannot agree that the Rental Form relieves Respondent from injury liability due to ice. First, the Rental Form did not mention injury due to ice. In addition, the Rental Form could only relieve Respondent of such liability if the general reference to "negligence" is sufficient to do so. The clause of the Rental Form reads as follows:

10. I hereby release from any legal liability the ski area and its owners, agents and employees, as well as the manufacturers and distributors of this equipment from any and all liability for damage and injury or death to myself or to any person or property resulting from the selection, installation, maintenance, adjustment or use of this equipment and for any claim based upon negligence, breach of warranty, contract or other legal theory, accepting myself the full responsibility for any and all such damage, injury or death which may result.

"Although exculpatory clauses in contracts releasing an individual from his or her own future negligence are disfavored, they are not prohibited as against public policy." *Alack v. Vic Tanny International of Missouri, Inc.*, 923 S.W.2d 330, 334 (Mo.1996). "However, contracts exonerating a party from acts of future negligence are to be 'strictly construed against the party claiming the benefit of the contract, and clear and explicit language in the contract is required to absolve a person from such liability.'" *Id.* (quoting, *Hornbeck v. All American Indoor Sports, Inc.*, 898 S.W.2d 717, 721 (Mo.App.1995)).

"Historically, Missouri appellate courts have required that a release from one's own future negligence be *explicitly* stated." *Id.* at 336 (emphasis in original). The Court in *Alack* determined that the best approach was to follow precedent and decisions from our state as well as others and to require clear, unambiguous, unmistakable, and conspicuous language in order to release a party from his or her own future negligence. *Id.* at 337. The language of the exculpatory clause must effectively notify a party that he or she is releasing the other party from claims arising from the other party's own negligence. *Id.* General language will not suffice. *Id.* "The words 'negligence' or 'fault' or their equivalents must be used conspicuously so that a clear and unmistakable waiver and shifting of risk occurs." *Id.* Whether a contract is ambiguous is a question of law to be decided by the court. *Id.* "An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." *Id.*

Respondent's exculpatory clause uses the term "negligence." However, that does not end our inquiry. We must determine whether the exculpatory clause uses "clear, unmistakable, unambiguous and conspicuous language." *Id.* The exculpatory clause purports to shield Respondent from "any claim based on negligence and . . . any claim based upon . . . other legal theory. . . ." *Alack* teaches us that "there is no question that one may never exonerate oneself from future liability for intentional torts or for gross negligence, or for activities involving the public interest." *Id.* Respondent argues that the language from paragraph 8 of the rental form "does not purport to release defendant from liability for intentional torts, gross negligence, or activities involving the public interest" and that use of the word "negligence" results in a clear understanding of the acts for which liability is released. We disagree. The exculpatory clause uses general language, to wit, "any claim based on . . . other legal theory." This language includes intentional torts, gross negligence or any other cause of action not expressly listed. "A contract that purports to relieve a party from any and all claims but does not actually do so is duplicitous, indistinct and uncertain." *Id.* Here, the Rental Form purports to relieve Respondent of all liability but does not do so. Thus, it is duplicitous, indistinct and uncertain, *Id.*, and thence arises an ambiguity. *Rodriguez v. General Accident,* 808 S.W.2d 379, 382 (Mo. banc 1991).

In addition, the exculpatory language and its format did not effectively notify the Appellants that they were releasing Respondent from claims arising from its negligence. The form the Appellants signed was entitled "Snow Creek Ski Area Rental Form." It did not indicate it

was a release. This title was in large type and could not be reasonably construed to include release of liability. By contrast, the exculpatory clause is in approximately 5 point type at the bottom of the form. "[A] provision that would exempt its drafter from any liability occasioned by his fault should not compel resort to a magnifying glass and lexicon." *Alack*, 923 S.W.2d at 335. The Appellants had to sign the Rental Form to receive ski equipment and had to do so while in a line. The language and format of the exculpatory clause leaves doubt that a reasonable person agreeing to the clause actually would understand what future claims he or she is waiving. *Id.* at 337–38. The language drafted by Respondent is not "unambiguous" or "conspicuous," and thus does not meet the standard of *Alack*. *Id.*

Thus, Respondent cannot rely on that language to claim the Appellants expressly assumed the risk of the injury complained of in the petition.

## B. Implied Assumption of Risk

 Implied assumption of risk includes two sub-categories, implied primary and implied secondary. Implied primary assumption of risk involves the question of whether the defendant had a duty to protect the plaintiff from the risk of harm. *Sheppard*, 904 S.W.2d at 261. It applies where the parties have voluntarily entered a relationship in which the plaintiff assumes well-known incidental risks. *Id.* The plaintiff's consent is implied from the act of electing to participate in the activity. *Id.* Implied primary assumption of the risk is also a complete bar to recovery. *Id.* at 262. On the other hand, implied secondary assumption of the risk occurs when the defendant owes a duty of care to the plaintiff but the plaintiff knowingly proceeds to encounter a known risk imposed by the defendant's breach of duty. *Id.* In implied secondary assumption of the risk cases, the question is whether the plaintiff's action is reasonable or unreasonable. *Id.* If the plaintiff's action is reasonable, he is not barred from recovery. *Id.* If the plaintiff's conduct in encountering a known risk is unreasonable, it is to be considered by the jury as one element of fault. *Id.* This case involves implied primary assumption of the risk.

Appellants claim the trial court erred when it ruled, "[t]he court finds that the Plaintiff assumed the risk of injury by skiing on the Defendant's ski slope and that Plaintiff's injuries were of a type inherent to the sport of skiing and that this incident involves dangers so obvious that the Defendant does not owe a duty to the Plaintiff and therefore is not required to warn the Plaintiff of such danger." Respondent argues that the Appellants are barred by implied primary assumption of risk because by engaging in the sport of skiing, they impliedly assumed the risk of falling on the ice.

 "Generally, assumption of risk in the sports context involves primary assumption of risk because the plaintiff has assumed certain risks inherent in the sport or activity." *Id.*

[U]nder comparative fault, if the plaintiff's injury is the result of a risk inherent in the sport in which he was participating, the defendant is relieved from liability on the grounds that by participating in the sport, the plaintiff assumed the risk and the defendant never owed the plaintiff a duty to protect him from that risk. If, on the other hand, the plaintiff's injury is the result of negligence on the part of the defendant, the issue regarding the plaintiff's assumption of that risk and whether it was a reasonable assumption of risk, is an element of fault to be compared to the defendant's negligence by the jury.

*Id.* at 263–64. The basis of implied primary assumption of risk is the plaintiff's consent to accept the risk. *Id.* "If the risks of the activity are perfectly obvious or fully comprehended, plaintiff has consented to them and defendant has performed

his or her duty." *Martin v. Buzan,* 857 S.W.2d 366, 369 (Mo.App.1993).

As a "defending party," Respondent may establish a right to summary judgment by showing that there is no genuine dispute as to the existence of each of the facts necessary to support its properly pleaded affirmative defense and that those factors show Respondent is entitled to judgment as a matter of law. *ITT,* 854 S.W.2d at 381. In order for Respondent to have established its right to summary judgment based upon implied primary assumption of the risk, Respondent had to show that there was no genuine dispute that the Appellants' injuries were the result of falling on ice, and that ice was a risk inherent in the sport of skiing. While there is no question that the Appellants' injuries were a result of falling on ice, there is a genuine dispute regarding whether encountering the ice in this case is an inherent risk of skiing. Respondent notes that many states including Colorado, Idaho, Maine, Michigan, Montana, New Hampshire, New Jersey, New Mexico, Ohio, and West Virginia have all enacted statutes which codify assumption of the risk as is pertains to the sport of snow skiing. However, there is no such statute in Missouri, and this court is not willing to say, as a blanket rule, that all ice encountered on Respondent's property is an inherent risk in the sport of snow skiing. There is a genuine dispute as to the nature of the ice. Was it "large areas of thick impenetrable ice hidden under a dusting of snow on the ski slopes," as the Appellants claim, or was it ice on the slopes that the Appellants had been over several times prior to falling. These are questions which must be answered by a fact-finder. While the basis of implied primary assumption of the risk is the plaintiff's consent to accept the risk, the plaintiff must be aware of the facts that create the danger and they must appreciate the danger itself. *Sheppard,* 904 S.W.2d at 264. Thus, the standard is a subjective one: "what the particular plaintiff in fact sees, knows, understands and appreciates." *Id.*

Here, the record does not include evidence that the Appellants were aware of the facts that created the danger or that they appreciated the danger itself. In fact, there was only evidence to the contrary, that the Appellants did not know, understand or appreciate the ice because it was under snow.

Therefore, we find that summary judgment cannot, on this record, be based upon express or implied primary assumption of the risk.

### III. Release

Respondent argues on appeal that the "Rental Form" operated as a release. Respondent did not plead release as an affirmative defense in its answer. Release is an affirmative defense that must be pleaded in an answer. Rule 55.08. Failure to plead an affirmative defense constitutes a waiver of the defense. *Leo's Enterprises, Inc. v. Hollrah,* 805 S.W.2d 739, 740 (Mo.App.1991). Since Respondent did not plead the affirmative defense of release, summary judgment would not be proper based upon the theory of release.

### IV. Artificial Snow

We affirm the trial court's grant of summary judgment on Count III of the Appellants' petitions. The Appellants state in Count III of their petitions that Respondent created a dangerous condition by making artificial snow and dispersing it on the ski slope and Respondent owed a duty to them as business invitees not to create dangerous conditions on the premises. The trial court was correct in granting Respondent's summary judgment on Count III, because a possessor of land does not have a duty to protect invitees against conditions that are open and obvious as a matter of law. *Peterson,* 920 S.W.2d at 933. A condition is open and obvious if invitees should reasonably be expected to discover it. *Id.* Respondent could be liable only if it was not reasonable

for it to expect the Appellants to see and appreciate the risk and to take reasonable precautions. *Harris,* 857 S.W.2d at 226. Artificial snow at Snow Creek is an open and obvious condition, and it is reasonable for Respondent to expect the Appellants to see and appreciate the risk of artificial snow and to take appropriate precautions.

## V. Conclusion

The judgment of the trial court is affirmed as to Count III of each of the petitions. It is reversed and remanded for further proceedings on counts I, II, & IV.

LOWENSTEIN and LAURA DENVIR STITH, JJ., concur.