

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99696 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| JEREMIAH F. MCMILLON, | ) | Hon. Mark D. Seigel |
| | ) | |
| Appellant. | ) | FILED: May 6, 2014 |

Jeremiah McMillon ("Defendant") appeals from the judgment of the trial court following a bench trial in which the trial court convicted him of two counts of forcible sodomy (Counts 1 and 8), one count of forcible rape (Count 7), one count of attempted forcible rape (Count 2), one count of kidnapping (Count 6), four counts of robbery in the first degree (Counts 3, 4, 5, and 9), and one count of stealing a motor vehicle (Count 10), for which the trial court sentenced him as a persistent offender to terms of life imprisonment for Counts 1 through 9, and to a term of fifteen years' imprisonment for Count 10. Defendant contends that he was denied his right to self-representation by the trial court's refusal to rescind its order appointing standby counsel, and that the trial court abused its discretion in denying his motion to sever Counts 6 through 10 from Counts 1 through 5. Finding no error, we affirm.

Defendant does not challenge the sufficiency of the evidence to sustain his convictions. Defendant was charged by indictment with ten offenses arising from three

separate incidents that involved a total of four victims. The indictment charged Defendant with kidnapping, forcible rape, forcible sodomy, robbery in the first degree, and stealing a motor vehicle, Counts 6 through 10 respectively, against L.P. on July 6 and 7, 2010. It also charged Defendant with two counts of robbery in the first degree against A.M. and S.D. respectively (Counts 4 and 5), occurring on September 5, 2010. It further charged Defendant with forcible sodomy, attempted forcible rape, and robbery in the first degree against Y.Z., on September 6, 2010.

Defendant initially was represented by counsel from the Missouri State Public Defender's office ("MSPD"), who filed motions to suppress evidence and identification that the trial court overruled. The trial was set for February 27, 2012. On January 19, 2012, Defendant told the trial court that he wanted to discharge his appointed public defender and to represent himself, and filed a written request to that effect. The trial court questioned Defendant closely and advised him of the risks and pitfalls of self-representation to ensure that his decision to represent himself was made knowingly, voluntarily, and with full understanding of the consequences. It granted Defendant's Request to Proceed Without Assistance of Counsel, but also ordered the public defender who had represented him to act as "standby counsel" to assist and advise him, if requested, before, during and after the trial. The MSPD filed a motion to rescind the trial court's order of January 19, 2012, appointing the public defender as standby counsel for Defendant, arguing that such an appointment violated Defendant's Sixth Amendment right to self-representation and also that Section 18 CSR 10-2.010(2) of the Code of State Regulations prohibited employees of the MSPD from acting as standby or hybrid counsel. The trial court denied this motion after a hearing on February 24, 2012.

2

On the morning of trial, Defendant filed a Motion to Sever Counts 6 through 10 from Counts 1 through 5, which the trial court denied.[1] Defendant and the prosecutor conducted voir dire and selected a jury, which was sworn in. The prosecutor made her opening statement to the jury, and court adjourned for the day. The following day, Defendant filed a request to waive his right to a jury trial, which the trial court granted, dismissing the jury and making the case a bench trial. Defendant represented himself throughout the trial, questioned witnesses, making objections, and making motions, and the trial court directed its discourse to him. Defendant did not request assistance from standby counsel, who essentially did not participate in the trial. The trial court convicted Defendant on all of Counts 1 through 10. The trial court sentenced Defendant to terms of life imprisonment on Counts 1 through 9, with the sentences for Counts 1 through 3 to run consecutively, for Counts 4 through 9 to run concurrently with those for Counts 1 through 3 and to each other. The trial court also sentenced Defendant to a term of fifteen years' imprisonment for Count 10, to run consecutively to the sentences for Counts 1 through 9. Defendant now appeals from this judgment.[2]

In his first point relied on Defendant contends that the trial court erred in refusing to rescind its appointing public defender as "standby counsel" and forcing him to proceed to trial with standby counsel over his objection, thereby violating his rights under the U.S. Constitution and the Missouri Constitution. Defendant argues that the trial court's order is structural error in that the imposition of standby counsel is a denial of Constitutional right to waive counsel and a violation of Section 18 CSR 10-2.010(2) of

---

[1] The State filed an information in lieu of indictment on the day of trial, without objection from Defendant, that added a specific address to one of the counts, and to add the allegation that he was a persistent offender.

[2] Defendant filed his appeal late, but this Court granted him leave to file his appeal out of time.

3

the Code of State Regulations that prohibits an employee of the State Public Defender System from serving as standby or hybrid counsel.

The Sixth Amendment right to counsel "'implicitly embodies a correlative right to dispense with a lawyer's help.'" State v. Black, 223 S.W.3d 149, 153 (Mo. banc 2007) (quoting Faretta v. California, 422 U.S. 806, 814, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). This right to self-representation applies to the states through the Due Process Clause of the Fourteenth Amendment, and prevents a state from forcing unwanted counsel upon a defendant. Id. (citing Faretta, 422 U.S. at 836, 95 S.Ct. 2525). Denial of a defendant's right of self-representation is structural error, and accordingly is not subject to harmless error analysis. Id. (quoting McKaskle v. Wiggins, 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)).

However, trial courts may appoint standby counsel even over a defendant's objections without violating a defendant's Sixth Amendment right to self-representation. McKaskle, 465 U.S. at 184, 104 S.Ct. 944, 79 L.Ed.2d 122. The Supreme Court expressly held that:

> A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel-even over the defendant's objections-to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible even in the unlikely event that it somewhat undermines the *pro se* defendant's appearance of control over his own defense.

Id. The Supreme Court also addressed the limits on standby counsel's actions without the consent of the *pro se* defendant. It held that there is no absolute bar on standby counsel's unsolicited participation in the trial. Id. at 176-77. The primary issue is

4

whether the defendant had "a fair chance to present his case in his own way." Id. at 177. It went on to note that the objectives behind the right to proceed *pro se* could be undermined by "unsolicited and excessively intrusive participation by standby counsel." Id. It noted that in proceedings before a jury that a defendant might be legitimately concerned that "multiple voices 'for the defense'" would confuse the message that the defendant seeks to convey, and accordingly there must by some limits on the extent of standby counsel's "unsolicited participation." Id.

The Supreme Court expounded on this, holding that first, the *pro se* "is entitled to preserve actual control over the case he chooses to present to the jury[,]" which is the core of the *Faretta* right to self-representation. Id. at 178. It held that the *Faretta* right is eroded if standby counsel's participation over the defendant's objection allows standby counsel effectively to make or interfere substantially with any "significant" tactical decisions or to control the examination of witnesses, or to speak instead of the defendant on any important matter. The Supreme Court further held that second, standby counsel's participation without the defendant's consent should not be permitted to destroy the jury's perception that the defendant is representing himself. Id. It noted that from the perspective of the jury, the message conveyed by the defense may depend as much on the messenger as on the actual message, while from the defendant's viewpoint the right to appear *pro se* can lose much of its significance if only the lawyers in the courtroom know that it is being exercised. Id. at 179.

When the participation by standby counsel is outside of the presence of the jury, only the first limitation is engaged, that is, control over the case. Id. The Supreme Court held that:

5

.... A trial judge, who in any event receives a defendant's original *Faretta* request and supervises the protection of the right throughout the trial, must be considered capable of differentiating the claims presented by a *pro se* defendant from those presented by standby counsel. Accordingly, the appearance of a *pro se* defendant's self-representation will not be unacceptably undermined by counsel's participation outside the presence of the jury.

Thus, *Faretta* rights are adequately vindicated in proceedings outside the presence of the jury if the *pro se* defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel

Id. (internal citations omitted).

The present case was a bench trial, so the only limitation on uninvited participation by standby counsel is the control over the defendant's case. From our review of the record, after standby counsel turned Defendant's file over to Defendant, apparently on February 24, 2012, Defendant fully controlled all of his case. Defendant made and argued his own motions. Prior to Defendant's election to waive a jury trial, he participated in the voir dire and jury selection. Standby counsel did nothing. During the actual bench trial Defendant questioned the witnesses and made his own objections. The trial court was scrupulous in directing matters to Defendant for his response. The only action of note by standby counsel was to deny to the trial court that she signed an affidavit that Defendant submitted to the trial court during the trial. Standby counsel raised no objections, questioned no witnesses, and made no motions. Defendant's *Faretta* rights clearly were vindicated in this case, as Defendant had absolute control over his defense.

Defendant argues that the appointment of standby counsel made his waiver of counsel ineffective and served to impose counsel on him, citing to State v. Roper, 268

6

S.W.3d 392, 399 (Mo. App. 2008). He asserts that this case stands for the proposition that a defendant who has standby or hybrid counsel has the aid and assistance of a lawyer, and has not actually waived counsel. Roper does use that language, but Defendant mischaracterizes the holding of the appellate court. The defendant in that case argued that he did not voluntarily waive his right to counsel because he was never advised of the risks of self-representation. Id. The appellate court noted that standby counsel was appointed for the entire trial, and observed "'one who has 'standby' counsel or 'hybrid' counsel has the aid and assistance of an attorney and has not actually waived counsel.'" Id. (quoting State v. Hunter, 810 S.W.2d 850, 860 (Mo. banc 1992)). It went on to hold that the defendant was repeatedly told about the risks of self-representation, acknowledged those warnings, but insisted on proceeding without counsel, and that the record reflected that he understood the charges against him and the range of punishment. Far from holding that the appointment of standby counsel denies a defendant his right to self-representation, the appellate court in fact held that "[i]n light of the fact that [defendant] had standby counsel throughout his trial, we believe that the trial court properly found that [defendant] voluntarily, knowingly, and intelligently waived his right to counsel." Id. We note that the Supreme Court in McKaskle, 465 U.S. at 184-88, 104 S.Ct. 944, 79 L.Ed.2d 122, held that the unsolicited participation of standby counsel during a trial did not interfere with a defendant's right to self-representation, provided that the defendant still had control over his case and that standby counsel's participation did not detract from defendant's appearance of control over his *pro se* defense. Point denied.[3]

_____

[3] Defendant also argues that the trial court's order appointing the assistant public defender as standby counsel violated Section 18 CSR 10-2.010(2). Whether or not this is in fact correct has no bearing on

7

In his second point relied on Defendant argues that the trial court erred by abusing its discretion in denying his motion to sever Counts 6 through 10, which involved the victim, L.P., from Counts 1 through 5, which involved the other victims. He asserts that this ruling violated his constitutional rights to due process, a fair trial, and to be tried only on the offense charged in that he was substantially prejudiced by the failure to sever the charges because the alleged conduct with L.P. was not part of common scheme or plan with the conduct with the other victims, A.M., S.D., and Y.Z. He claims that combining the offenses in a single prosecution prejudiced him because L.P.'s identification of him was questionable and combining the charges into one prosecution bolstered her identification and likely led to his conviction on Counts 6 through 10.

Joinder and severance are two separate, distinct issues for appellate review. State v. Reeder, 182 S.W.3d 569, 576 (Mo. App. 2005). Joinder deals with what crimes can be charged in a single prosecution, whereas severance presupposes that joinder is proper and leaves the question of whether the defendant may be prejudiced if the charges are joined together to the discretion of the trial court. Id.

Rule 23.05 provides that joinder is proper where the manner in which the crimes were committed:

> are of the same or similar character or based on two or more acts or transactions or on two or more acts or transactions that are connected or that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

whether Defendant's Sixth Amendment right to self-representation was violated. Furthermore, Defendant lacks standing to challenge the trial court's order on this basis as the alleged violation did not impact his rights. The Public Defender could have challenged this order by seeking a writ of prohibition to order the trial court to withdraw the appointment. See State ex rel. Missouri Public Defender Commission v. Waters, 370 S.W.3d 592, 597-98 (Mo. banc 2012). It did not do so.

The interest of judicial economy favors liberal joinder of criminal charges; accordingly, joinder is appropriate when any of these criteria are present. Reeder, 182 S.W.3d at 576. This Court only examines the State's evidence to determine if joinder is proper. State v. Woods, 336 S.W.3d 473, 476 (Mo. App. 2011). The tactics used in separate offenses need not be identical to constitute acts of the same or similar character. Id. We may consider several non-exclusive factors, including the commission of the same type of offenses, victims of the same sex and age group, offenses occurring at the same location, or offenses closely related chronologically. Id.

In the present case in each of the three separate incidents, Defendant's victims were college students. Defendant in each case tried to hide his facial features, he approached all of his victims at night, he threatened them with a firearm, and he robbed them. In addition, all of the offenses had a sexual component. In the incidents involving L.P. and Y.Z., Defendant committed forcible rape and forcible sodomy, and in the incident involving A.M. and S.D., he compelled A.M. to expose S.D.'s breasts by pulling down her tank top and bra. Given the similar characteristics of the several incidents, joinder was proper.

However, even when joinder is proper, severance may be necessary to avoid substantial prejudice to the defendant that could result if the charges are not tried separately. State v. Morrow, 314 S.W.3d 339, 342 (Mo. banc 2010). The decision to grant or to deny severance is left to the trial court's sound discretion. Id. The trial court's decision denying a motion to sever will be reversed if the trial court abused its discretion in overruling the motion and if there was a clear showing of prejudice. Id. A trial court abuses its discretion if its ruling clearly against the logic of the circumstances

9

before the trial court and if it is so unreasonable and arbitrary as to shock the sense of justice and suggest a lack of careful consideration. Id.

In determining whether severance is required, the trial court considers, among other things, the number of offenses and whether the complexity of the evidence allows the jury to distinguish the evidence and apply the law to each separate offense without confusion. Id. Severance is appropriate only after the defendant "'makes a particularized showing of substantial prejudice if the offense is not tried separately' and after the 'court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.'" Id. (quoting Rule 24.07). If the evidence relating to each offense is uncomplicated and distinct, and the jury is properly instructed to return separate verdicts for each charged offense, then the trial court did not abuse its discretion in denying the motion to sever. State v. Warren, 141 S.W.3d 478, 489 (Mo. App. 2004) Merely because juries are disposed to regard a person charged with two crimes with more of a jaundiced eye than a person charged with one does not mandate severance. Id. at 488. "'The general allegation that the jury would likely consider evidence of guilt on one charge as evidence of guilt on another charge does not meet the requirement of a particularized showing of substantial prejudice.'" Id. at 488-89 (quoting State v. Bechhold, 65 S.W.3d 591, 597 (Mo. App. 2002)).

In the present case Defendant did not make a particularized showing of substantial prejudice. He alleged that L.P.'s identification of him was improper as she initially did not positively identify him as her assailant from a photo array, but rather her identification of him was the product of improper suggestion by law enforcement, and that trying Counts 6 through 10 involving L.P. with Counts 1 through 5 would improperly

10

bolster the case against him on Counts 6 through 10.   In addition, the evidence for the separate offenses of July 6, 2010, September 5, 2010, and September 6, 2010, is uncomplicated and distinct.   Moreover, although this case started off as a jury trial, and proceeded through voir dire as such, Defendant waived his right to a jury trial after the prosecutor's opening statement, and the case was tried before a judge.   Accordingly, there was no issue with jury instructions being sufficient.   In bench-tried cases this Court presumes that the trial judge was not prejudiced by improper or inadmissible evidence and was not influenced by it in reaching a judgment, unless it is clear from the record that the trial judge considered and relied on the inadmissible evidence.   State v. Crews, 406 S.W.3d 91, 94 (Mo. App. 2013).   There is nothing in the record to indicate that the trial court, as the finder of fact, relied on the evidence relating to Counts 1 through 5 to convict Defendant on Counts 6 through 10.   The trial court did not abuse its discretion in overruling Defendant's motion to sever.   Point denied.

The judgment of the trial court is affirmed.


_____
CLIFFORD H. AHRENS, Judge

Roy L. Richer, P.J., concurs.
Glenn A. Norton, J., concurs.

11